**SIBLEY v. PERKINS BROS. DRY GOODS CO. (No. 1743.)**

Court of Civil Appeals of Texas. Beaumont. Dec. 6, 1928.

R. L. Stennis, of Dallas, for appellant.
McNees & Roberts, of Dallas, for appellee.

WALKER, J. This is a suit by appellee against J. W. Russell, H. V. Russell, and appellant, S. W. Sibley, as partners, under the firm name of Russell & Co. Appellee's claim consisted of three drafts drawn by it "to the order of ourselves" on Russell & Co., and duly accepted; two of the drafts being for $200 each and the third for $300. It was alleged that the defendants "made, executed and delivered" to the plaintiff the three drafts, which the petition undertook to set out in hæc verba. Due allegations of presentment, failure to pay, and liability were made, with prayer for proper relief. Each of the defendants answered by a sworn plea denying that appellant was a member of the partnership of Russell & Co., also by general and special demurrers and general denial, etc. A plea of privilege was also filed, but abandoned. The trial was to the court without a jury, and judgment was in favor of plaintiff against the defendants, jointly and severally, for $693.20, the amount sued for, less certain agreed credits. Appellant, S. W. Sibley, alone has prosecuted the appeal. We discuss his propositions in the order presented.

1. He says the petition was subject to general demurrer, because the drafts as copied into the petition payable to the order of the plaintiff were "not endorsed by plaintiff and not accepted or in any way endorsed or executed by defendants." The drafts as copied into the petition show no indorsement or acceptance by defendants. But this did not render the petition bad on general demurrer. The allegation that the defendants "made, accepted and delivered" the drafts was an allegation of liability upon which any evidence showing that the drafts had been accepted was admissible. To create a liability against defendants, it was not essential that the acceptance be indorsed on the face of the drafts.

2. During the trial appellee was permitted to file a trial amendment showing that defendants had accepted the drafts in writing by indorsing their acceptance on the face of the drafts. This amendment was allowed to meet appellant's objection of variance between the drafts as pleaded and as offered in evidence. No error was committed in allowing appellee to file this trial amendment.

3. The trial amendment just referred to was filed more than four years after the accrual of appellee's cause of action. Asserting that the original petition was subject

to the general demurrer, an absolute nullity, and insufficient to toll the statutes of limitation on the ground that the drafts as copied therein did not show on their face that they had been accepted, appellant insists that the trial amendment set up a new cause of action barred by limitation. We have already said that the original petition was not subject to the general demurrer, but, had it been, its allegations were sufficient to toll limitation. Nothing material was added to the original petition by the trial amendment, except to show the acceptance indorsed on the face of the drafts. This did not set up a new cause of action. The cause as pleaded by the trial amendment was not only "essentially identical," which is all that is required by the rule announced in Phœnix Lumber Co. v. Water Co., 94 Tex. 456, 61 S. W. 707, but absolutely identical in all its essentials, meeting all four tests required by the court in that case. It was there said: "Four tests are laid down by which to determine the identity of the causes of action: (1) Would a recovery had upon the original bar a recovery under the amended petition; (2) would the same evidence support both of the pleadings; (3) is the measure of damages the same in each case; (4) are the allegations of each subject to the same defenses?"

4. While there was a variance between the acceptances as copied in the original petition and as copied in the trial amendment, in that as copied in the trial amendment the following indorsement was added: "Accepted 6 6 1921 Russell & Company by Vaughn H. Russell," this variance was obviated by the trial amendment above discussed filed under order of the court.

5. The trial court permitted J. W. Russell to testify that in the absence of appellant he had told a representative of appellee that appellant was a member of the partnership of Russell & Co. The evidence showed further that appellee relied on this information and extended Russell & Co. the line of credit out of which arose the indebtedness sued on. The admission of this evidence was not reversible error. The trial was to the court without a jury, and therefore if the evidence was wrongfully received it would not constitute reversible error unless there was an affirmative showing that it entered into the court's conclusions of fact upon which the judgment was based. As the court filed no separate conclusions of fact in this case, and as appellant has made no showing that this particular evidence entered into the court's judgment, it becomes unnecessary for us to determine whether the evidence was properly received.

6. Appellant insists that the evidence is wholly insufficient to raise the issue that he was a member of the partnership of Russell & Co. The statement of facts is very short. Appellee testified in his own behalf and denied that he was a member of the partnership and satisfactorily explained by his evidence all the circumstances relied upon by appellee to establish the partnership. Appellee made the following case by its evidence:

In 1920 Mr. Russell and his sons were in the mercantile business at Wylie, Tex. At that time appellant was an officer in one of the banks at Wylie and interested in a mercantile business at Wylie. Mr. Russell and his sons were customers and borrowers from appellant's bank and at that time owed the bank about $1,500. Business was dull, and appellant advised Mr. Russell to seek a new location for his business, hoping that he would be able to meet his obligations by doing so, and suggested Graham. Tex., because of its oil boom. Mr. Russell made a trip to Graham and reported back to appellant that Stewart & Walker, a mercantile firm at Graham, would sell their stock for $8,000. We quote as follows from Mr. Russell's testimony: "After this trip to Graham, Texas, I immediately had another conference with S. W. Sibley. We talked over my situation at Wylie and the prospects at Graham and went fully into the details as to my indebtedness and the probable amount which we would need if I moved my stock of merchandise from Wylie to Graham and if he purchased the stock of Stewart & Walker, and that S. W. Sibley agreed to purchase the Stewart & Walker stock and did purchase it for the sum of $8,000, and we consolidated our stock by moving my stock from Wylie and putting it in with the Stewart & Walker stock in Graham, and changed the name of Russell & Sons to J. W. Russell & Company. Some time after starting the business at Graham, I had stationery printed for the firm, and this stationery included the name of S. W. Sibley. Same showing three names at the top, being S. W. Sibley, my name and Vaughn's. I did not have any detailed written agreement of partnership with S. W. Sibley. That it was my understanding during our conferences with reference to purchasing of the stock at Graham, and the consolidation of the two stores, and the various amounts needed, and the probable income of the company from sales, and how various claims could be met that S. W. Sibley was a partner in the business. In all our conversations with reference to the purchase and consolidation of the stocks and all detailed negotiations, with reference to payments, and otherwise, S. W. Sibley used the word 'we' in everything which pertained to the business. Several months thereafter S. W. Sibley did suggest that he did not want to be held out as a partner. I did give O. H. Dollison a financial statement, in which S. W. Sibley was shown to be a partner, and I did not correct this statement. I also gave financial statements to R. C. Dunn and Bradstreet & Company, in which S. W. Sibley was shown to be a partner. I also told Mr. Dollison, at the time I purchased the merchandise, for the

Perkins Bros. Dry Goods Company, that S. W. Sibley was a member of the firm of J. W. Russell & Company and that he and his son Vaughn H. Russell, did write letters to Perkins Dry Goods Company, after the notes were signed, with S. W. Sibley's name appearing on the stationery, and that I probably made the same statements to other representatives of plaintiff, at the time they obtained the notes." We think this testimony raised the issue of partnership and supports the trial court's judgment.

7. Appellant's seventh proposition is that judgment must be supported both by the pleadings and the evidence. The proposition, of course, states a correct rule of law. Appellee's judgment in this case is fully supported by both the pleadings and the evidence, fully meeting all essentials of appellant's proposition.

8. The eighth proposition is merely a restatement of the sixth, and requires no further discussion.

This disposes of all propositions relating to the assignments of error. By his argument appellant advances additional propositions of variance, etc., but these propositions have no support in any of the assignments.

Affirmed.